IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

PARKERSBURG DIVISION

ERIE INSURANCE PROPERTY & CASUALTY COMPANY,

       Plaintiff,

v.             CIVIL ACTION NO. 6:08-cv-00258

ELECTROLUX HOME PRODUCTS, INC.,

       Defendant.

**MEMORANDUM OPINION & ORDER**

  There are currently three motions by the defendant pending before the court: Motion to Exclude from evidence certain opinions to be offered by the plaintiff's experts [Docket 26]; Motion for Summary Judgment [Docket 28]; and Motion for Sanctions due to Spoliation of Evidence [Docket 30]. For the reasons explained below, all three motions are **DENIED**.

**I. Background**

  On October 30, 2006, a fire damaged Bonnie J. Rice's home in Wood County, West Virginia. Ms. Rice ("the Insured") was insured by the plaintiff, Erie Insurance Property & Casualty Company ("Erie"). (Compl. 1 [Docket 1].) On October 31, 2006, Erie investigated the fire and concluded that it was accidental and, therefore, covered by the Insured's policy. Accordingly, Erie paid the Insured $132,147.05 for damage to personal property, repair to the structure, and loss of use during the time repairs were made. (*Id.* at 2.) Thereafter, Erie filed this suit against the defendant, Electrolux Home Products, Inc. ("Electrolux"), alleging that a Frigidaire freezer manufactured, sold, and distributed

by Electrolux was the cause of the fire. (*Id.*) Erie argues, thus, that Electrolux is liable for the damages and must pay Erie the $132,147.05, plus interest and court costs. (*Id.* at 2-3.)

Erie and Electrolux do not agree on the underlying facts of the case, but Electrolux argues in its motions that those disputes are not at issue in the pending motions. Because I find that a clear statement of the facts is impossible without presenting both parties' theories of the case, however, I will briefly discuss the facts as alleged by both Erie and Electrolux. There are some facts on which the parties appear to agree. First, both parties agree that the fire/heat damage to the home was located in both the kitchen and the master bedroom, and that the master bedroom had more visible damage. (Def.'s Mem. Supp. Mot. Summ. J. 3 [Docket 29].) Second, both parties agree that Erie retained Mr. John Sandy to investigate the cause of the fire on the day after it occurred and that Mr. Sandy concluded that the fire originated from the Elextrolux freezer. (*Id.*) Third, on December 12, 2006, Electrolux's representatives Mr. Robert Sampey and Mr. Ralph Brown inspected the fire scene and at some point afterwards Erie disposed of the freezer. (Def.'s Mem. Supp. Mot. Sanctions 1-2 [Docket 31].) The parties agree on other facts as well, but the major issues in this case remain in dispute.

There is a factual dispute about the cause of the fire. Erie alleges that the fire began when heat from the freezer burned into the floor below the freezer in the kitchen. Erie further alleges that the fire traveled underneath the floor, through crawl space, and into the master bedroom where it then caused more extensive damage to the master bedroom. Erie plans to call Mr. Sandy to testify that, based on his experience in reviewing fire scenes, the fire began underneath the freezer. Erie further plans to present the testimony of the Fire Chief of the Lubeck Volunteer Fire Department, Mr. Stewart, who was on the scene to extinguish the fire. Mr. Stewart will testify that there was a

fire in the kitchen when he arrived, which his Fire Department extinguished well before the fire was visible in the master bedroom. Therefore, the testimony of Mr. Stewart will apparently support the theory of Mr. Sandy. Electrolux, on the other hand, alleges that the fire began in the master bedroom and argues that it is impossible for its experts to tell precisely where the fire originated due to spoliation of evidence at the scene by Erie. Electrolux's expert, Mr. Laun will testify that the freezer's compressor did not overheat or malfunction, but rather was working properly at the time of the fire. Furthermore, Electrolux challenges the expertise of Erie's experts and argues that there is evidence that the reports are flawed.

The parties further disagree about whether Electrolux agreed to allow Erie to dispose of the freezer in question. Electrolux argues that none of its representatives gave Erie approval to dispose of the freezer and therefore Erie acted wrongfully in doing so. Erie, on the other hand, contends that Electrolux inspected the evidence and the fire scene, was given the opportunity to retain the evidence, specifically the freezer, but declined to do so, and therefore, Erie acted properly in disposing of the freezer. In addition, Electrolux argues that Erie further spoliated other evidence, but Erie contends that any such spoliation occurred while the firefighters were extinguishing the fire, through no fault of Erie's.

## II. Analysis

Before I address Electrolux's Summary Judgment Motion, I will address the Motion to Exclude and the Motion for Sanctions because I find that the resolution of those motions could inform the summary judgment discussion.

### A. Motion to Exclude

Electrolux moved to exclude any opinion of Mr. Sandy and Mr. Stewart that: (1) the Electrolux freezer at issue was defective in any regard and (2) the point of origin of the fire was located at or near the freezer. (Def.'s Mot. Exclude 1-2 [Docket 26].) First, Electrolux argues that neither Mr. Sandy nor Mr. Stewart have the expertise or qualifications to testify as to whether the freezer was defective. (Def.'s Mem. Supp. Mot. Exclude 4-5 [Docket 27].) Second, Electrolux challenges Mr. Sandy's examination of the fire scene, arguing that it "was not performed in accordance with applicable methodology relied upon by experts in the field, and therefore any opinion from him relating to the origin of the fire is unreliable and inadmissible." (Def.'s Mem. Supp. Mot. Exclude 7-8.) Furthermore, Electrolux challenges Mr. Stewart's testimony on the grounds that he admitted that his opinion of what happened "is merely a hypothesis and only represents what possibly could have happened." (*Id.* at 9-10 (citing *Stewart, Tr.* 65-66, 78).) In response, Erie contends that Mr. Sandy and Mr. Stewart are not going to testify as to whether the freezer was defective, but rather they will testify that the fire started under the freezer after the freezer acted as a heat source to start the fire. (Pl.'s Resp. Def.'s Mot. Exclude 2 [Docket 37].)

I cannot find that this is an appropriate time to decide whether these experts are qualified to testify at trial. Such a decision should occur only after a *Daubert* hearing where I will examine the qualifications of the proposed expert witnesses. Accordingly, Electrolux's Motion to Exclude the Expert Witnesses of Erie [Docket 26] is **DENIED at this time**.

### B. Motion for Sanctions Due to Spoliation of Evidence

Electrolux contends that (1) "[d]ue to its destruction of the freezer, Erie should be precluded from asserting that any malfunction or defect existed in the freezer other than . . . [that] the fire was

caused due to a defect in the compressor of the freezer[, which Erie has alleged throughout the litigation; and (2)] an adverse instruction [should] be given to the jury regarding the determination of the cause and origin of the fire and the missing evidence." (Def.'s Mot. Sanctions 1-2 [Docket 30].)

In *Silvestri v. General Motors Corp.*, the Fourth Circuit determined that the federal law of spoliation applies in federal court because "the power to sanction for spoliation derives from the inherent power of the court, not substantive law." 271 F.3d 583, 590 (2001). The court's authority to impose sanctions is "limited to that necessary to redress conduct which abuses the judicial process." *Id.* (internal citation omitted). The policy underlying the inherent power to sanction parties for spoliation of evidence stems from "the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth." *Id.* A district court must keep this policy in mind when deciding on an appropriate sanction for spoliation of evidence. *Id.*

I **FIND** that a ruling on spoliation of evidence at this time would be premature. Such a decision should occur at trial, where I can hear the evidence and more accurately determine a just result. Accordingly, Electrolux's Motion for Sanctions due to Spoliation of Evidence [Docket 30] is **DENIED at this time**.

### C. Summary Judgment

Electrolux argues that summary judgment is appropriate in this case because "Erie is unable, through either direct or circumstantial evidence, to satisfy its burden of establishing that the Electrolux product was defective and that the defect caused the fire at issue." (Def.'s Mot. Summ. J. 1 [Docket 28].)

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).

From the discussion of the facts above and the discussion of Electrolux's other motions, it is clear that there are many genuine issues of material fact in this case. Accordingly, I **FIND** that

Summary Judgment is not appropriate in this case and Electrolux's Motion for Summary Judgment [Docket 28] is **DENIED**.

### III. Conclusion

For all the reasons discussed in this opinion, Electrolux's Motion to Exclude, Electrolux's Motion for Sanctions, and Electrolux's Motion for Summary Judgment are **DENIED**. The court **DIRECTS** the Clerk to send a copy of this Memorandum Opinion and Order to counsel of record and any unrepresented party.

                          ENTER:       March 20, 2009

*Joseph R. Goodwin, Chief Judge*